A04A0332. IN THE INTEREST OF D. J. E., a child.
A04A0333. IN THE INTEREST OF I. B., a child.
(598 SE2d 108)

BLACKBURN, Presiding Judge.

D. J. E. and I. B. were adjudicated delinquent by the Juvenile Court of Chatham County. D. J. E. was adjudicated delinquent of burglary[1] and theft by taking of a motor vehicle.[2] D. J. E. appeals, contending that there was insufficient evidence to support the judgment. I. B. was adjudicated delinquent of possession of tools for the commission of a crime,[3] possession of a pistol by a minor,[4] and felony obstruction of a law enforcement officer.[5] I. B. appeals, contending that: (1) the trial court erred in denying his motion to suppress; and (2) there was insufficient evidence to support the judgment. Because both prosecutions are based on the same record, these separate appeals have been consolidated for consideration in this opinion. As set forth below, we affirm in both cases.

In considering an appeal from an adjudication of delinquency, we view the evidence in the light most favorable to the prosecution to determine if a rational trier of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. The evidence is considered under the standard of *Jackson v. Virginia*,[6] with all reasonable inferences construed in favor of the juvenile court's findings.

(Citation omitted.) *In the Interest of R. W.*[7]

---

[1] OCGA § 16-7-1.
[2] OCGA § 16-8-2.
[3] OCGA § 16-7-20.
[4] OCGA § 16-11-132.
[5] OCGA § 16-10-24 (b).
[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[7] *In the Interest of R. W.*, 257 Ga. App. 488 (571 SE2d 485) (2002).

Viewed in this light, the evidence shows that in the early morning hours of February 26, 2003, thieves broke into the showroom of Coastal Chevrolet and removed a board containing the keys to the dealership's inventory. The thieves used the keys to steal eight automobiles from Coastal Chevrolet. The thieves also attempted to steal a set of chrome wheels from another automobile. The chrome centerpieces from those wheels were found on the ground in a rear parking lot which was separated from the main lot by a fence and a locked gate. The latent fingerprints of D. J. E. were found on the chrome centerpieces.

In the early morning hours of February 28, 2003, police in South Carolina spotted one of the stolen automobiles, a red pickup truck, on Interstate 95. A high-speed chase ensued. The chase ended when the red truck pulled off the interstate and into the parking lot of a local school. Upon reaching the parking lot, the occupants of the red truck fled into a wooded area nearby. After a six-hour search, police received a tip that the suspects from the chase had been spotted using the telephone at a nearby motel. The police set up a perimeter around the area, brought in a bloodhound, and located D. J. E. and I. B. in the woods nearby.

When the Chatham County police went to South Carolina on the morning of February 28, 2003, they encountered the mother of I. B. She told the detectives that I. B. had spent the previous evening with D. J. E. and that she had received a phone call from I. B. at approximately 6:30 a.m. requesting that she pick them up at the motel near where they were apprehended.

In an effort to obtain further evidence, the police obtained a warrant to search the homes of D. J. E. and I. B. In the course of their search of I. B.'s bedroom, the police found a loaded .22 caliber revolver under the bed I. B. was lying on, a weighing scale, a collection of small plastic baggies, and a plastic bag containing a green leafy substance which appeared to be marijuana. The police arrested I. B. and transported him to the Chatham County Police Department and then to the Youth Detention Center. Upon entering the Youth Detention Center, I. B. began struggling with the officer escorting him. I. B. attempted to kick one of the officers and spat at the officer before he was subdued.

1. D. J. E. contends that the evidence was insufficient to support the judgment finding him guilty of burglary and theft by taking. D. J. E. contends that there was no evidence which showed he entered the building of Coastal Chevrolet, an element of the crime of burglary. D. J. E. argues that the fact that his fingerprints were found in a fenced area behind the building does not show he entered the building and does not exclude every reasonable hypothesis as to how the fingerprints could have been impressed.

To sustain a conviction which is based solely on finger-print evidence, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed, under such circumstances that they could only have been impressed at the time when the crime was committed. Where there is additional circumstantial evidence, however, a conviction is warranted if the proved facts are consistent with the hypothesis of guilty and exclude every other reasonable hypothesis save that of guilt.

(Citations and punctuation omitted.) *Williams v. State.*[8] Here, there was additional circumstantial evidence beyond the presence of D. J. E.'s fingerprints on the centerpiece of the wheel. The evidence showed that the thieves broke into the building at Coastal Chevrolet and stole a board containing the keys to the dealership's inventory. The thieves then used the keys to steal eight automobiles. The evidence also showed that a mere two days after the automobiles were stolen, D. J. E. was found hiding in the woods near one of the stolen automobiles following a high-speed chase involving that automobile.

Although the evidence of recent, unexplained (or unsat-isfactorily explained) possession of stolen goods may be suf-ficient to give rise to an inference that the defendant com-mitted the burglary, the sufficiency of the evidence to support the conviction must still be adjudged by the totality of the evidence under the reasonable doubt standard applied in *Jackson v. Virginia*. Once it is shown that goods were stolen in a burglary, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for burglary based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the [trier of fact]; so is lack of explanation. What constitutes recent possession is in all cases a ... question [for the trier of fact], to be determined very largely from the character and nature of the stolen property.

*Martin v. State.*[9] Seeking to avoid this inference, D. J. E. argues that there was no evidence that he was ever in possession of the red truck. D. J. E. contends that the evidence at trial showed that at most he was a passenger in the truck, which, he argues, does not constitute possession of the truck. D. J. E.'s argument fails, however, because

---

[8] *Williams v. State*, 188 Ga. App. 284, 285 (372 SE2d 840) (1988).
[9] *Martin v. State*, 254 Ga. App. 40, 41 (1) (561 SE2d 154) (2002).

even a passenger in a stolen automobile may be convicted as a party to the crime of theft by taking if there are "circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *Underwood v. State.*[10] See also *Sanders v. State.*[11] Here, the fact that D. J. E.'s fingerprints were found at the crime scene, and the lack of any explanation for the presence of those fingerprints, provides the necessary circumstantial evidence from which D. J. E.'s participation in the crime may be inferred. There is sufficient evidence to sustain the judgment.

2. I. B. contends that the trial court erred in denying his motion to suppress the evidence found in the search of his bedroom. I. B. argues that there was not sufficient evidence to authorize the issuance of the search warrant. We do not agree.

> We review the validity of the search warrant under the "totality of the circumstances" test: (t)he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.

*Burke v. State.*[12]

The affidavit and application for a search warrant in this case recited the facts of the robbery of Coastal Chevrolet, including the fact that D. J. E.'s fingerprints had been found at the scene of the crime. The affidavit recounted the statement of I. B.'s mother that her son and D. J. E. had been together the prior evening and that they had telephoned her, requesting that she pick them up at the motel in South Carolina. In addition, the affidavit stated that D. J. E. and I. B. had been arrested for possession of one of the stolen automobiles following a high-speed chase. The affidavit also stated that the mothers of D. J. E. and I. B. had refused requests to allow the police to take the fingerprints of the two youths. The affidavit further stated that fingerprints other than those of D. J. E., as well as shoe prints, had been found at the scene of the crime. The police sought the warrant in order to obtain the fingerprints of both youths, to search

---

[10] *Underwood v. State*, 198 Ga. App. 384, 385 (401 SE2d 589) (1991).
[11] *Sanders v. State*, 204 Ga. App. 545, 546 (1) (a) (419 SE2d 759) (1992).
[12] *Burke v. State*, 265 Ga. App. 38 (592 SE2d 862) (2004).

for shoes matching the shoe prints at the crime scene, and to search for car parts and other stolen items. Under the totality of the circumstances, there was probable cause for the issuance of the search warrant.

I. B. also contends that the trial court erred in denying his motion to suppress because the search warrant was obtained based on statements the youths made to the South Carolina police prior to being informed of their *Miranda* rights.[13] We reject this argument as our examination of the affidavit and application for a search warrant shows that no mention of the offending statements was made in that document. As the offending statements were not utilized to obtain the search warrant, they cannot form a basis to challenge the warrant.

3. I. B. contends that there was insufficient evidence to support his adjudication of delinquency for felony obstruction. I. B. argues that although he spat at the officer, he did not kick the officer or otherwise offer to do violence to the officer. Thus, I. B. contends his conduct did not authorize an adjudication of delinquency for felony obstruction. An examination of the record, however, shows that Scott Reese, an investigator with the Chatham County Police Department, testified that he saw the altercation at the Youth Detention Center and that both D. J. E. and I. B. "were kicking at" Detective Allen O'Berry. This evidence, in conjunction with the evidence of I. B.'s attempts to spit on Detective O'Berry and evidence of the profanity laden statements made by I. B. during the altercation, was sufficient to authorize I. B.'s adjudication of delinquency for felony obstruction. See *Gillison v. State*[14] (kicking at officer and making verbal threats authorized felony obstruction conviction); *Gordon v. State*[15] (spitting on officer authorized obstruction conviction).

4. In his final enumeration of error, I. B. contends that there was insufficient evidence to support his adjudication of delinquency for possession of tools for the commission of a crime and possession of a pistol by a minor.[16] I. B. argues that his brother and sister had equal access to the bedroom where the items were found.

"Possession of contraband may be joint or exclusive, and actual or constructive." *Wilson v. State.*[17] It is uncontroverted that I. B. resided in the bedroom where the pistol and other contraband was found. Because the State presented evidence I. B. was an occupant of the bedroom in which the contraband was found, this raised a

---

[13] The trial court granted motions to suppress evidence of the statements at the trial.

[14] *Gillison v. State*, 254 Ga. App. 232 (1) (561 SE2d 879) (2002).

[15] *Gordon v. State*, 199 Ga. App. 704 (1) (406 SE2d 110) (1991).

[16] I. B. also argues that there was insufficient evidence to convict him of possession of marijuana. However, the record does not show that I. B. was convicted of this offense, so we need not address this contention.

[17] *Wilson v. State*, 231 Ga. App. 525, 526 (1) (499 SE2d 911) (1998).

rebuttable presumption that I. B. possessed the contraband. See id.

> [T]here is no requirement that the State must in every case prove that contraband was in the *exclusive* possession of one who is shown to be the owner or lessee of the premises. While evidence that the defendant-owner or lessee shared the premises with another does not demand a conviction, it may nevertheless authorize [the trier of fact] to find that the defendant was in at least *joint* possession of the contraband.

(Punctuation omitted.) Id. at 527 (1). There was sufficient evidence to show that I. B. was in joint, constructive possession of the pistol and other contraband. This enumeration of error is meritless.

*Judgments affirmed. Barnes and Mikell, JJ., concur.*

DECIDED APRIL 7, 2004.

*Barr, Warner & Pine, Wallace J. Williams*, for appellant (case no. A04A0332).

*Mark J. Nathan*, for appellant (case no. A04A0333).

*Spencer Lawton, Jr., District Attorney, Arvo H. Henifin, Kimberly Rowden, Assistant District Attorneys*, for appellee.